**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

BYRON PONDER and                                                                                                    PLAINTIFFS
ALLYSON PONDER

v.                                                    No. 4:16CV317 JLH

CRAIN BUICK GMC, LLC, d/b/a
CRAIN BUICK GMC; CHASE OSBORN;
CHRIS HARRALSTON; HEATH BOOTHBY;
SANTANDER CONSUMER USA, INC.,
d/b/a SANDTANDER CONSUMER USA;
ENTERPRISE FINANCIAL GROUP, INC.;
and JOHN DOES I-X                                                                                                    DEFENDANTS

**OPINION AND ORDER**

This dispute arises from the purchase of a vehicle from a local dealership. On April 6, 2016, Byron and Allyson Ponder purchased a 2014 GMC Acadia through Chase Osborn, a salesman employed by Crain Buick GMC. The Ponders allege that Osborn, Crain Buick GMC, and Chris Harralston represented to them that the mileage on the Acadia's odometer read 33,534 miles, but they knew that it read substantially more. The Ponders bring several causes of action against the Crain Buick GMC defendants, but only one cause of action against Enterprise Financial Group. Enterprise Financial was not involved with the allegedly false representations made to the Ponders leading up to the purchase of the Acadia. Rather, the Ponders purchased a vehicle service agreement from Enterprise Financial for $2,897. The Ponders seek rescission of the vehicle service contract and restitution. Enterprise Financial has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Document #13. For the following reasons, the motion is denied.

The complaint alleges the following facts. When the Ponders went to Crain Buick GMC's used car lot in Conway, Osborn told them about the Acadia. He said that it was not on the lot because the dealership had loaned it to the University of Central Arkansas. The Ponders test drove

a different Acadia that was on the lot, and then met with Osborn and Harralston, the Finance Manager. Osborn and Harralston told the Ponders that the odometer of the Acadia loaned to the University read 33,534 miles. The Ponders decided to purchase the Acadia, entering into a Retail Installment Contract with Crain Buick GMC. The contract indicated that the price of the Acadia was $27,873 and that the Ponders traded in their Toyota Camry for $3,129. The Ponders also purchased a Vehicle Service Contract for $2,897. Enterprise Financial administered the service contract. Vehicle service contracts[1] are sometimes referred to as extended warranties.

When the Ponders went back to pick up the Acadia, they noticed as they were driving off the lot that the odometer read 39,900 miles. They called Osborn, who told them that he would see what could be done. The Crain Buick GMC Customer Relations Manager offered the Ponders a free oil change. Then, the Ponders told the dealership that they wanted out of the contract because false representations had been made about the odometer. They went to the dealership and someone handed them a letter signed by Heath Boothby, the Financial Director. Boothby did not meet with the Ponders, but admitted in the letter that the representations concerning the odometer reading were false. On April 19, 2016, an agent of Crain Buick GMC signed the Title Assignment by Dealer and Odometer Disclosure, and mailed it to the Ponders. The odometer disclosure represented that the reading at the time of the sale was 33,534 miles.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

---

[1] A "motor vehicle service contract" or "service contract" is a "contract or agreement given for separate and identifiable consideration pursuant to which a service contract provider undertakes to perform or provide repair or replacement service, or indemnification for such service, for the operational or structural failure of a motor vehicle due to a defect in materials or workmanship or normal wear and tear . . . ." Ark. Code Ann. § 4-90-502.

Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The court must accept as true all of the factual allegations contained in the complaint and must draw all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

Enterprise Financial contends that the complaint does not state a claim against it, emphasizing that the Ponders did not allege facts connecting Enterprise Financial with any misrepresentations about the odometer. Document #14 at 1-2. With respect to Enterprise Financial, the complaint alleges:

17.  . . . Plaintiffs also purchased a Vehicle Service Contract for $2,897 . . . .

18.  The Vehicle Service Contract is administered by Enterprise Financial Group.

* * *

96.  The Vehicle Service Contract purchased by Plaintiffs is intertwined in the Contract between Plaintiffs and Crain Buick GMC. Plaintiffs purchased the Vehicle Service Contract based on the false representations regarding the 2014 GMC Acadia's odometer reading. To the extent necessary, Plaintiffs request the Court exercise its equitable powers and rescind the Vehicle Service Contract and the Contract.

Document #1 at 6, 22-23, ¶¶ 17-18, 96.  The Vehicle Service Contract is attached to the complaint.[2] *Id*. at 26.  The contract states that it is "Administered by Enterprise Financial Group, Inc. (EFG) or one of its affiliated companies . . . ." *Id*.  Allyson Ponder purchased the contract on April 6, 2016, for $2,897.  *Id*.  It states that the odometer read 33,534 miles.  *Id*.  Significantly, the contract provides that coverage ends either after 48 months or when the mileage of the vehicle reaches the total of the odometer reading at the time the contract was purchased and the term of contract mileage.  *Id*.  The term of contract mileage was 60,000, so the contract terminates when the mileage reaches 93,534, if 48 months has not already passed.  *Id*.

The Ponders ask the Court to use its equitable powers to rescind this contract and return the parties to the status quo.  Document #20 at 3.  "Rescission is a remedy by which the parties abandon, or recede from, a contract they now realize they did not intend to make or should not have been made."  HOWARD W. BRILL & CHRISTIAN H. BRILL, 1 ARK. LAW OF DAMAGES § 31:3.  Parties may voluntarily rescind a contract, or courts may rescind a contract upon a proper showing of mutual mistake of fact–a mistake[3] common to both parties.[4]  *Carter v. Matthews*, 288 Ark. 37, 40, 701 S.W.2d 374, 376 (1986) ("A mutual mistake of fact as to a material element of a contract is an appropriate basis for rescission.").  "Before a mutual mistake will affect the binding force of a

---

[2] The Court may consider materials necessarily embraced by the pleadings in deciding a motion to dismiss.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

[3] A mistake is a belief that is not in accord with the facts.  RESTATEMENT (SECOND) OF CONTRACTS § 151 (1981).

[4] For example, in *First Nat'l Bank of Wynne v. Coffin*, 184 Ark. 396, 42 S.W.2d 402 (1931), neither the buyer nor seller of farm land knew the land had been platted and subdivided with streets dedicated to the city, and both the buyer and the seller thought the farm encompassed more acres than it actually did.

contract, the mistake must be of an existing or past material fact which is the basis of the contract." *Mitchell v. First Nat'l Bank in Stuttgart*, 293 Ark. 558, 560, 739 S.W.2d 682, 683 (1987).

Here, the complaint sets forth enough facts to state a claim for equitable relief in the form of rescission. The Ponders believed that the Acadia's odometer read 33,534 miles. Document #1 at 5, ¶16. The Ponders purchased a Vehicle Service Contract. *Id*. at 6, ¶17. Enterprise Financial is obligated to administer that contract. *Id*. at 26. The duration of this obligation hinges upon the Acadia's mileage at the time of purchase. *Id*. The mileage is a material fact. The contract states that the Acadia's mileage at the time of purchase was 33,534 miles, when in fact it was 39,900 miles. *Id*. Accepting these facts as true, the Court can reasonably infer that neither the Ponders, nor Enterprise Financial, knew the current mileage at the time they agreed to the Vehicle Service Contract. They were mutually mistaken. Therefore, the complaint plausibly states grounds for equitable rescission based on mutual mistake of the vehicle service agreement administered by Enterprise Financial.

## CONCLUSION

For the foregoing reasons, Equitable Financial's motion to dismiss is DENIED. Document #13.

IT IS SO ORDERED this 16th day of August, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE